# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Michael John Husten, | Case No. 22-cv-2347 (NEB/TNL) |
| Petitioner, | |
| v. | **REPORT AND RECOMMENDATION** |
| Brian Collins, Paul Schnell, and Rebecca Holmes-Larson, | |
| Respondents. | |

---

Michael John Husten, MCF–Moose Lake, 1000 Lake Shore Drive, 55767, *pro se*.

Matthew Frank, Minnesota Attorney General's Office, 445 Minnesota St., Suite 1800, St. Paul, MN 55101-2134, for Respondents.

This matter comes before the Court on Petitioner Michael John Husten's (1) petition for a writ of habeas corpus [ECF No. 1 ("Original Petition")], (2) motion for "a preliminary injunction and/or a protective order" [ECF No. 10 ("PI Motion")], (3) motion for a default judgment [ECF No. 15 ("Default-Judgment Motion")], and (4) motion to amend the Petition [ECF No. 20 ("Motion to Amend")]. For the following reasons, the Court grants the Motion to Amend,[1] but recommends denying Husten's amended petition and denying the PI Motion and Default-Judgment Motions as moot. The Court also recommends denying Husten a certificate of appealability.

---

[1] For docketing purposes, the Court will enter a separate order granting the Motion to Amend.

# I.    BACKGROUND

## A.    History of Husten's Criminal Proceedings

To understand the Petition, it helps to review the circumstances of Husten's conviction. In March 2012, Husten pleaded guilty to one count of second-degree murder. *See* Register of Actions, *State v. Husten*, No. 27-CR-12-2130 (Minn. Dist. Ct.).[2] Sentenced to 20 years in prison, Husten is presently confined at the Minnesota Correctional Facility at Moose Lake, Minnesota. *See id.*; Pet. 3 [ECF No. 1].

Critically, the relevant murder took place in 1975. *See, e.g.*, *State v. Husten*, No. A12-1337, 2014 WL 1516237, at *1 (Minn. Ct. App. Apr. 21, 2014). The sentencing court thus applied the second-degree-murder statute applicable in 1975—Minn. Stat. § 609.19 (1974)[3]—and issued Husten an indeterminate sentence of up to 20 years. *See, e.g.*, Order Granting Def.'s Mot. to Dismiss 1, *Husten v. Schnell*, No. 62-CV-20-3939 (Minn. Dist. Ct. Feb. 3, 2021).

Under Minnesota's earlier indeterminate-sentencing procedure—in force in 1975—prisoners received a maximum prison term and a parole board then made parole decisions through periodic assessments. *See, e.g.*, *State ex rel. McMaster v. Benson*, 495 N.W.2d 613, 615 (Minn. Ct. App. 1993) (discussing earlier system). In 1980, Minnesota switched to a determinate-sentencing regime. *See, e.g.*, 9 Henry W. McCarr and Jack S. Nordby,

---

[2] This Report and Recommendation cites numerous documents not provided by the parties, but which are publicly accessible court documents. The Court may take judicial notice of public court records. *See, e.g.*, *Thompson v. R.J. Reynolds Tobacco Co.*, 760 F.3d 913, 918 (8th Cir. 2014) (citing *Kent v. United of Omaha Life Ins. Co.*, 484 F.3d 988, 994 n.2 (8th Cir. 2007)); *Jones v. Ellison*, No. 22-CV-2144 (WMW/JFD), 2022 WL 18215879, at *1 n.2 (D. Minn. Dec. 8, 2022) (citing cases), *report and recommendation adopted*, 2023 WL 146269 (D. Minn. Jan. 10, 2023).

[3] The relevant version of § 609.19 reads: "Whoever causes the death of a human being with intent to effect the death of such person or another, but without premeditation, is guilty of murder in the second degree and may be sentenced to imprisonment for not more than 40 years."

Criminal Law and Procedure (Minnesota Practice Series) § 42:1, Westlaw (4th ed., through November 2022 update) (discussing change). Under determinate sentencing, judges impose sentences of a particular length, and prisoners do not receive parole (but can qualify for good-time credit or the like). *See, e.g.*, *id.*

This regime change has also allegedly affected other aspects of Husten's sentence. Under Minnesota law, for instance, the state's commissioner of corrections can "order that any offender be placed on conditional medical release ['CMR'] before the offender's scheduled supervised release date or target release date if the offender suffers from a grave illness or medical condition and the release poses no threat to the public." Minn. Stat. § 244.05, subd. 8. As the Court understands Husten's filings, he asserts that in May 2020, a state committee addressing COVID-19 concerns recommended placing him on CMR. *See* Pet. 9; ECF No. 1-1 at 38. Authorities later reversed that decision, stating that "[i]ndividuals with life sentences are not eligible for COVID-19 related [CMR]." *See* ECF No. 1-1 at 39. Husten, of course, was subject to an indeterminate 20-year sentence, not a "life sentence." The problem appears to be that, because Husten's sentence arose from Minnesota's old determinate-sentencing regime, he lacked the "scheduled supervised release date or target release date" after which authorities could grant him a CMR under Minn. Stat. § 244.05, subd. 8.

## B.    The Original Petition

With this background in place, the Court turns to the Petition, which the Court received on September 23, 2022. *See* Pet. 1. The filing presented five "grounds for relief."

- Ground One asserted that Rebecca Holmes-Larson—as relevant here, the Minnesota Department of Corrections's ("MDOC's") executive officer overseeing hearings and release—inappropriately "re-sentenced" Husten to a "life sentence" by improperly identifying him as a "life sentenced offender." *Id.* at 4 (capitalization amended). Because of this improper identification, Husten claimed, authorities have denied him parole hearings and (as noted above) found him ineligible for a CMR. *Id.* Husten suggested that this violated his federal constitutional right to due process (and various Minnesota laws). *See id.* at 4–6.

- Ground Two stated that Holmes-Larson and Paul Schnell (the MDOC's present commissioner) violated the U.S. Constitution's "Ex Post Facto Clause"[4] in the way they handled Husten's parole eligibility. *Id.* at 6.

- Ground Three claimed that "spoliation" occurred because certain records of a July 2021 "[p]arole [b]oard [h]earing" apparently do not exist. *Id.* at 8. Husten claimed that this violated his due-process rights. *See id.*

- In Ground Four, Husten argued that Schnell and Holmes-Larson "[f]raudulently, [f]alsely and injuriously" conspired to deny Husten a CMR "without any due process." *Id.* at 9.

- Finally, Ground Five asserted that Schnell and Holmes-Larson have denied Husten various "[l]ife saving [m]edical [t]reatments." *Id.* at 10. The specific examples here were vaccines and other medically useful injections. *See id.* Husten suggested that denying him these treatments was "[c]ruel and [u]nusual punishment[]" violating the Eighth Amendment. *See id.* at 10–11.

For relief, the Petition sought (1) a declaration that the described conduct violated Husten's constitutional rights, (2) immediate "Supervised Parole Release," and (3) Husten's "immediate release from physical incarceration." *Id.* at 11.

---

[4] Husten refers here to the Fifth Amendment, which has no ex post facto clause. The Court construes him to mean instead Article I's prohibition on any state "pass[ing] any . . . ex post facto law." U.S. Const. art. I, § 10, cl. 1.

### C.    Post–Original Petition Developments

On October 26, 2022, the Court received the PI Motion. *See* PI Mot. 1. As the Court understands this filing, it asks the Court to bar Holmes-Larson's further involvement in any decisions (broadly speaking) concerning Husten's incarceration or parole. *See id.* at 4.

On December 8, 2022, this Court entered an order discussing 28 U.S.C. § 2254(b)'s exhaustion requirement and noting that "Husten has not explained how he has exhausted his state-court remedies" for the Petition's claims. Order 2 [ECF No. 14]. The Court therefore ordered Husten to show cause "why the Court should not dismiss this matter without prejudice for failure to exhaust state-court remedies." *Id.* at 3.

Several days later, the Court received the Default-Judgment Motion. This asks the Court to enter a default judgment in Husten's favor due to Respondents' alleged failure to answer the Petition. *See* Default-J. Mot. 1.

### D.    Motion to Amend and Show-Cause Response

On December 27, 2022, the Court received Husten's response to the Court's show-cause order [ECF No. 22 ("Show-Cause Response")] and the Motion to Amend. The Show-Cause Response briefly discusses standing and justiciability, arguing that Respondents have caused Husten "actual injury." Show-Cause Resp. 2 (emphasis removed). As for exhaustion, Husten argues that (1) Respondents themselves have not raised an exhaustion argument, and (2) he is not challenging his "conviction or sentence imposed," but rather the constitutionality of his present confinement. *Id.* at 3.

In the Motion to Amend, Husten submits an Amended Petition [*see* ECF No. 20-2 at 1–10 ("Amended Petition")] and asks the Court to treat it as this action's operative petition. *See* Mot. to Amend. 1. The Amended Petition is broadly similar to the original, but has three grounds for relief instead of five.

- Ground One claims that Holmes-Larson's classification of Husten as a "life sentenced inmate/offender" violates due process, and the handling of his CMR proceedings, violated his Fourteenth Amendment due-process rights. Am. Pet. 3–5.

- Ground Two asserts that Respondents have violated the U.S. Constitution's "Ex Post Facto Clause"[5] by referring to his 20-year sentence as a sentence for life imprisonment. *Id.* at 5–7.

- Finally, Husten argues that he experienced cruel and unusual punishment by being approved for "supervised parole," but then having that approval retracted. *Id.* at 7–8.

The Amended Petition's request for relief again asks for declaratory relief as well as an order that Respondents either release Husten to "supervised parole" or grant him an "formal [h]earing with the Minnesota Parole-Board" to consider his release under various Minnesota statutes. *Id.* at 10.

## II.     ANALYSIS

### A.     Motion to Amend

As a threshold issue, the Court will address the Motion to Amend. Under Rule 15(a)(1)(A) of the Federal Rules of Civil Procedure, as relevant here,[6] "[a] party may

---

[5] Husten again refers to the Fifth Amendment here, but the Court treats him as referring to Article I instead. *See* note 4 *infra*.

[6] While this action concerns a habeas petition subject to 28 U.S.C. § 2254, Rule 12 of the Rules Governing § 2254 Cases in the U.S. District Courts ("§ 2254 Rules") states that "[t]he Federal Rules of Civil Procedure . . . , to the extent that they are not inconsistent with any statutory provisions or these rules, may be applied to a proceeding under these rules." The Court is unaware of any inconsistency between Rule 15(a) of the Federal Rules of Civil Procedure, on the one hand, and any statutory provisions or the § 2254 Rules, on the other.

amend its pleading once as a matter of course within . . . 21 days after serving it[.]"  The

original Petition has not been served on Respondents, and so the Court concludes that Hus-

ten's motion to amend meets the Rule 15(a)(1)(A) deadline.  Husten can therefore amend

the Petition "once as a matter of course," so the Court grants the Motion to Amend.  The

Amended Petition is now this action's operative petition.

> **B.    Amended Petition**

Given that the amended Petition still presents a habeas petition subject to 28 U.S.C.

§ 2254, the exhaustion discussion in the Court's earlier order applies to the Amended Pe-

tition just as it did to the original Petition.  Under § 2254(b)(1),

> [a]n application for a writ of habeas corpus on behalf of a per-
> son in custody pursuant to the judgment of a State court shall
> not be granted unless it appears that—
>
> (A)    the applicant has exhausted the remedies available in
> the courts of the State; or
>
> (B)    (i)    there is an absence of available State corrective
> process; or
>
> (ii)    circumstances exist that render such process in-
> effective to protect the rights of the applicant.

Exhaustion in the relevant sense has occurred when a petitioner has given "the state courts

one full opportunity to resolve any constitutional issues by invoking one complete round

of the State's established appellate review process."  *O'Sullivan v. Boerckel*, 526 U.S. 838,

845 (1999); *see also Brende v. Young*, 907 F.3d 1080, 1084 (8th Cir. 2018) (citing *O'Sul-*

*livan*).

The Show-Cause Response makes two arguments; the Court will address these in

turn.  First, Husten argues that he has standing to raise this action's claims because of

"actual injury" he has experienced. Show-Cause Resp. 2. The Court does not dispute that Husten's allegations suggest "actual injury." But to press a habeas petition subject to § 2254, standing is necessary but not sufficient—a petitioner must also have exhausted his or her state-court remedies.

Second, Husten challenges the Court's ability to raise exhaustion concerns *sua sponte*—he claims that Respondents themselves have not raised exhaustion as a defense. *See id.* at 2–3. But the U.S. Court of Appeals for the Eighth Circuit has explained that when a court addresses a habeas petition subject to § 2254, the court can address exhaustion on its own initiative. *See, e.g.*, *McCartney v. Vitek*, 902 F.2d 564, 567 (8th Cir. 1990) (citing *Davis v. Campbell*, 608 F.2d 317, 320 (8th Cir. 1979) (per curiam)); *McDonald v. Titus*, No. 18-CV-3099 (PJS/TNL), 2019 WL 5783727, at *5 (D. Minn. Nov. 6, 2019) (discussing cases). To be sure, when a court does so, it must give the parties an opportunity to be heard on the issue. *See McDonald*, 2019 WL 5783727, at *5 (citing cases). But here Husten got that chance—after all, the Court has specifically ordered him to address exhaustion.

After Husten provides these arguments, he makes no exhaustion showing whatsoever. In other words, he makes no attempt to show that he has presented the arguments in the Petition (or the Amended Petition's similar claims) to Minnesota's state courts. *See* Show-Cause Resp. 1–3. It is a petitioner's burden to establish exhaustion. *See, e.g.*, *Carmichael v. White*, 163 F.3d 1044, 1045 (8th Cir. 1998) (citing cases); *Braun v. Minnesota Dep't of Corr.*, No. 21-CV-2297 (ECT/DTS), 2022 WL 754157, at *2 (D. Minn. Jan. 31, 2022) (citing cases, including *Carmichael*), *report and recommendation adopted in*

8

*relevant part*, 2022 WL 748375 (D. Minn. Mar. 11, 2022), *certificate of appealability denied*, No. 22-1853, 2022 WL 15147458 (8th Cir. June 1, 2022).  Because Husten has failed to do so, the Court recommends dismissing this action for failure to meet § 2254(b)'s exhaustion requirement.

### C.    Remaining Motions and Certificate of Appealability

Given the Court's recommendation concerning the Amended Petition, the Court further recommends denying the PI Motion and Default-Judgment Motion as moot.

As a final point, a habeas petitioner detained under a state-court judgment—like Husten here—cannot appeal from the petition's denial unless the district court grants him or her a certificate of appealability ("COA").  *See* 28 U.S.C. § 2253(c).  The Court does not believe that the grounds on which it recommends dismissal are fairly debatable; the Court therefore recommends that a COA not be issued to Husten.  *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

[Continued on next page.]

9

# RECOMMENDATION

Based on the foregoing, and on all of the files, records, and proceedings herein, **IT**

**IS HEREBY RECOMMENDED THAT**:

    1.    The amended petition for a writ of habeas corpus of petitioner Michael John Husten [ECF No. 1] be **DENIED** for failure to exhaust state-court remedies.

    2.    Husten's motion for "a preliminary injunction and/or a protective order" [ECF No. 10] and motion for a default judgment [ECF No. 15] be **DENIED** as moot.

    3.    No certificate of appealability be issued.


Date: March___8___, 2023           _____*s/ Tony N. Leung*_____
                                     Tony N. Leung
                                     United States Magistrate Judge
                                     District of Minnesota


                                     *Husten v. Collins et al.*
                                     Case No. 22-cv-2347 (NEB/TNL)


## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. *See* Local Rule 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).